**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>v.<br><br>Heaven-Leigh Loas,<br><br>  Defendant. | No. CR-20-08012-001-PCT-GMS<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

According to the stipulation of the parties, the Court held a trial without a jury from January 19, 2021 to January 20, 2021. The Defendant is charged with Assault with a Dangerous Weapon and Assault Resulting in Serious Bodily Injury in violation of Section 113 of Title 18 of the United States Code. The Court hereby makes its findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Defendant Heaven-Leigh Loas ("Defendant") has some quantum of Indian blood and is a member of the White Mountain Apache Tribe of the Fort Apache Reservation. The White Mountain Apache Tribe of the Fort Apache Reservation is a federally recognized Indian Tribe within the District of Arizona.

2. On December 21, 2018 both Fidelis Hanna Junior ("Hanna") and Defendant were present at or near the home of Ruby Gordon in the Canyon Day community located on the White Mountain Apache Tribe of the Fort Apache Reservation. There, Defendant

intentionally stabbed Hanna twice in the forearm with a folding knife. Defendant asserts that she was acting in self-defense.

3. Defendant testified that several past incidents of domestic violence caused her to fear Hanna and expect that he could become violent. She testified that these experiences, and the fact that Hanna was heavily intoxicated at the time, influenced her decision to use a weapon during the incident. While the Court accepts that Defendant was entitled to consider the times when she was the victim of Hanna's violent conduct in deciding whether it was reasonable to use force against him to defend herself, the Court cannot determine that the somewhat dated past instances of violent conduct alone justify stabbing the victim twice in the forearm with a folding knife. Rather, whether the prosecution has carried its burden of disproving self-defense requires careful consideration of the facts surrounding the incident as it occurred.

4. Further, although the Government presented some evidence that Defendant has a reputation for violence, the Court does not consider these prior acts or her reputation in determining whether she acted in self-defense in this instance.

5. The only witnesses to the actual event were the Defendant and the victim. The Court accepts the account of neither of the two witnesses completely but accepts those parts of the varying accounts where uncontroverted or supported by other evidence.

6. It is uncontroverted that, as a result of the stabbing, Hanna suffered two separate lacerations to his forearm. The first was a two-centimeter laceration which severed a portion of the muscle in his forearm. The second was a one-centimeter laceration which penetrated to the muscle.

7. Hanna described the pain from the wounds as 10/10 pain to White Mountain Apache Tribe Emergency Medical Services Provider Fernando Feller, and a 7/10 to White River Indian Health Services Nurse Anna Lennox, RN. The wound has also led to lasting discomfort for Hanna, who testified that he still felt discomfort and pain when doing certain activities.

8. The wounds also produced a significant amount of blood. At trial,

photographs of the blood at the scene were introduced into evidence.

9. There is no evidence or testimony that Hanna was armed with a weapon during the incident or that he indicated to Defendant that he had a weapon, although Defendant testified that, based on her prior experiences with Hanna, she believed he was armed.

10. Hanna is considerably smaller than Defendant: Hanna testified that he is 5' 3" and weighs 145 pounds, and Defendant testified that she is 5' 5" and weighs approximately fifty pounds more than the Defendant. The testimony was that Defendant had the ability to "fight like a man."

11. Neither account of the incident suggests that Defendant was on the porch of Ruby Gordon's home when she stabbed Hanna. Defendant testified that both she and Hanna were standing on the ground in front of the porch's side ramp when she stabbed him. Hanna, however, testified that he was located on the raised front porch at the top of the ramp when he was stabbed, and that Defendant was standing on the ground in front of the porch when she stabbed him. Therefore, the Court finds that at least the Defendant was on the ground in front of the area towards the top of the ramp when the stabbing occurred. Hanna testified that he extended his arm to Defendant from the porch at her request, thinking she was going to kiss it. In a video of him being questioned in the hospital while he was still intoxicated, he said that he was going to grab her and they would be "lovey dovey."

12. At trial, Lieutenant Jonathan Steah testified that when he took photographs at the scene he was "trying to get an overall view of the scene to show the blood." Nevertheless, the photos depict no evidence of blood on the ground in front of the porch ramp area adjacent to the bicycle's back tire where the Defendant stated the stabbing occurred. Nor do they show any blood trail from that area to the stairs or on the ramp. Rather, the pictures show significant blood spatter on the porch at the top of the ramp on the side of the home (the location where the victim said he was when the stabbing occurred), and a large pool of blood near the home's front door, where the victim said he

went to knock on the door to get help after he was stabbed. There were also small amounts of blood on the stairs from the porch to the ground. The droplets on the stairs are consistent with the victim's account that he walked down the stairs to go to the eventual location of the ambulance. The limited droplets are not consistent, however, with Defendant's assertion that the victim ascended the stairs after receiving two deep, penetrating wounds.

13. The Court thus finds that, consistent with Hanna's testimony, the stabbing occurred while Hanna was located on the porch at the top of the ramp and Defendant was located on the ground in front of the porch.

14. The Court thus also does not accept the Defendant's testimony that both she and Hanna were located on the ground in front of the porch and that, while on equal footing, Hanna shoved her prior to the stabbing. The evidence indicates that Hanna was located on the raised porch while Defendant was on the ground below. Given the porch railing, the difference in elevation, and the presence of the bicycle leaning against the railing, he was thus not in a position to shove, advance upon Defendant, or create a reasonable threat of harm, even if she did perceive him as trying to "grab" her. In fact, Defendant's own account of the incident has not always included these events; while incarcerated, she was recording telling family members over the phone that she had not stabbed Hanna at all.

15. Even if Defendant did perceive Hanna as a threat from the porch, their relative positions render her response unreasonable. She testified that she removed the folding knife from her bra, opened it, and stabbed Hanna. This was an unreasonable response given Hanna was located on the porch above.

16. It also seems unlikely, regardless of Hanna's location, that he would have waited the time it took for the Defendant to withdraw the knife from her bra, open its blade and stab him without taking evasive action. The Court thus finds Hanna's testimony more credible that the knife was already out of her bra and open when the Defendant approached the victim. As a result, the Court finds that Defendant did not reasonably believe that stabbing Hanna was necessary to protect herself against the immediate use of unlawful force.

# CONCLUSIONS OF LAW

### 1. Jurisdiction

Section 113 of the United States Code punishes felony assault within the territorial jurisdiction of the United States. 18 U.S.C. § 113. Any Indian who commits a felony assault under section 113 within the Indian Country shall be tried in the same courts and subject to the same law and penalties as all other persons committing felony assault within the exclusive jurisdiction of the United States. 18 U.S.C. §§ 1153, 3242. A person is an Indian within the meaning of the Code if "the defendant (1) has some quantum of Indian blood and (2) is a member of, or is affiliated with, a federally recognized tribe. *United States v. Zepeda*, 792 F.3d 1103, 1106–07 (9th Cir. 2015).

Defendant has some quantum of Indian blood and is a member of the White Mountain Apache Tribe of the Fort Apache Reservation. The White Mountain Apache Tribe of the Fort Apache Reservation is a federally recognized tribe. Defendant stabbed Hanna in violation of Section 113 of the United States Code while located on the White Mountain Apache Tribe of the Fort Apache Reservation. The Court therefore has jurisdiction pursuant to 18 U.S.C. § 1153.

### 2. Assault with Dangerous Weapon 18 U.S.C. § 113(a)(3)

In order for the defendant to be found guilty of Assault with a Dangerous Weapon, the Government must prove beyond a reasonable doubt that (1) the defendant assaulted the victim by intentionally wounding him using a display of force that reasonably caused him to fear immediate bodily harm; (2) the defendant acted with the intent to do bodily harm to the victim; and (3) the defendant used a dangerous weapon. 18 U.S.C. § 113(a)(3); Ninth Circuit Court of Appeals Model Criminal Jury Instruction 8.7. "An object is a dangerous weapon within the meaning of 18 U.S.C. § 113(a)(3) if it is either inherently dangerous or otherwise used in a manner likely to endanger life or inflict great bodily harm." *United States v. Smith*, 561 F.3d 934, 939 (9th Cir. 2009) (internal quotations omitted).

Defendant intentionally stabbed Hanna twice in the forearm with intent to do bodily harm to the victim. The folding knife used by Defendant was inherently dangerous. It was

also used in a manner likely to endanger life or inflict great bodily harm—Defendant wielded the knife with force sufficient to cause two lacerations and damaged both the skin and muscle, and photographs of the scene demonstrate the wounds caused a significant amount of bleeding.

### 3. Assault Resulting in Serious Bodily Injury 18 U.S.C. § 113(a)(6)

In order for the defendant to be found guilty of Assault Resulting in Serious Bodily Injury, the Government must prove beyond a reasonable doubt that (1) the defendant assaulted victim by intentionally wounding him; and (2) as a result, the victim suffered serious bodily injury. 18 U.S.C. § 113(a)(6); Ninth Circuit Court of Appeals Model Criminal Jury Instruction 8.9. "Serious bodily injury" means bodily injury that involves (1) a substantial risk of death; (2) extreme physical pain; (3) protracted and obvious disfigurement; or (4) protracted loss or impairment of the function of a body part, organ, or mental faculty. 18 U.S.C. §§ 113(b)(2), 1365(h)(3).

Defendant intentionally stabbed Hanna twice in the forearm, and Hanna suffered serious bodily injury as a result. Hanna's arm was punctured deep enough to damage the muscle and he credibly testified that the wounds caused him great pain.

### 4. Self-Defense

Where "there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility," the Government must "disprove beyond a reasonable doubt any claim of self-defense" *United States v. Sanchez-Lima*, 161 F.3d 545, 549 (9th Cir. 1998). "The use of force is justified when a person reasonably believes it is necessary for the defense of oneself or another against the immediate use of unlawful force. However, a person must use no more force than appears reasonably necessary under the circumstances." Ninth Circuit Court of Appeals Model Criminal Jury Instruction 6.8. "Force likely to cause death or great bodily harm is justified in self-defense only if a person reasonably believes that such force is necessary to prevent death or great bodily harm." *Id.*

Hanna was stabbed while standing on the front porch of Ruby Gordon's home. Both

Defendant and Hanna testified that she was located on the ground in front of the porch when she stabbed Hanna. The pair were separated by the raised porch railing. Hanna is over 50 pounds lighter and two inches shorter than the Defendant, and there is no evidence that he was armed, or represented that he was armed, during the incident.

Even if Defendant perceived danger from Hanna, her use of force was disproportionate. Although Hanna was located above her and there was no evidence he posed an immediate or deadly threat, she approached and stabbed him. Force with a knife long enough to penetrate the victim's muscle was likely to cause great bodily harm. Defendant then lied to relatives in subsequent phone calls where she recounted the incident, claiming that she had not stabbed the victim at all. As a result of these circumstances, the Court finds that Defendant did not reasonably believe stabbing Hanna was necessary to protect herself against the immediate use of unlawful force. The Government has disproven Defendant's self-defense claim beyond a reasonable doubt.

## CONCLUSION

For the reasons stated above, the evidence at trial proves beyond a reasonable doubt that Defendant intentionally stabbed Hanna with a dangerous weapon causing serious bodily injuries, and that her actions were not justified by self-defense.

**IT IS THEREFORE ORDERED** finding Defendant guilty of Assault with a Dangerous Weapon in violation of 18 U.S.C. §§ 1153 and 113(a)(3).

**IT IS FURTHER ORDERED** finding Defendant guilty of Assault Resulting in Serious Bodily Injury in violation 18 U.S.C. §§ 1153 and 113(a)(6).

**IT IS FURTHER ORDERED** directing the Probation Department to prepare a presentence investigation report.

/ / /

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** setting Sentencing for **April 5, 2021 at 1:30 p.m.** Objections to the Presentence Report are due 14 days after the report is submitted. Any motions for departure or variance or sentencing memoranda are due 6 business days before sentencing, and responses are due 3 business days before sentencing.

Dated this 22nd day of January, 2021.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge